

Steven M. Raiser        87 Walker Street, 2nd Floor        Of Counsel
Thomas A. Kenniff        New York, NY 10013        Mark Hathaway
Douglas M. Reda                                         Alexander Lonstein

July 11th, 2024

**VIA ECF & EMAIL**
The Honorable James L.Cott
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, New York, New York 10007-1312

         *Re:*      *United States v. Nymiah Branch*
                   *Case No. 1:24-cr-00180-JLC*

Dear Judge Cott:

       This office respectfully submits this memorandum in advance of Nymiah Branch's sentencing, which is currently scheduled for July 18th, 2024. For the reasons set forth below, the defense requests that the Court impose a non-incarceratory sentence.

Procedural History

       On March 28th, 2024, Mr. Branch pled guilty to a misdemeanor information charging him with one count of Housing and Urban Development fraud (18 U.S.C § 1012). Pursuant to his guilty plea, Mr. Branch admitted to accepting $4,500 in bribes from contractors doing business with his employer, the New York City Housing Authority (NYCHA). His plea was pursuant to a Government sponsored plea agreement, with a stipulated guideline range of 8 to 12 months imprisonment.

Mr. Branch's Personal and Family History

       Mr. Branch grew up in the Boulevard Towers housing project in Brooklyn, with his parents and three siblings. His father worked as a janitor at Bellevue Hospital and his mother as a homemaker. Although money was tight, his parents managed to provide the necessities of life for him and his brother and sisters. Growing up, Mr. Branch had to navigate the violence and drug activity that were part of daily life in his neighborhood. While he considers himself blessed to have had two loving parents, his mother struggled with alcoholism, and her drinking impacted him deeply, even into adulthood. Mr. Branch cites his mother's struggles with alcohol as the reason for his own abstinence.

Manhattan Office                                             Suffolk Office
87 Walker Street                                  150 Motor Parkway, Suite 401
New York, NY 10013                             Hauppauge, NY 11788
212-274-0090         www.raiserandkenniff.com         888-504-2746

Mr. Branch's sister, Nyema Russell, speaks effusively of her brother's good nature in her letter to the Court. Nyema describes her brother as having been a role model and father figure to her son, and equally attentive to her daughter, while she was struggling to raise her children as a single mother. She recounts Mr. Branch showing up whenever possible and "teaching [her] son everything he knows about basketball and martial arts, and acting as [her] daughter's 'hype man' at her performances and events" (see "**Exhibit A**").

In 2015, Mr. Branch married his long-term girlfriend, Christina. The couple purchased their first home together in Elmont, Long Island. As a hardworking Black family, they were proud to attain their piece of the American dream. They were even prouder when two years later they welcomed their now 6-year-old son, Bryson, into the world. Christina describes Mr. Branch as a "kind" and "loving" husband and father, extremely dedicated to both his family and his work. She recounts how he attended to the well-being of the NYCHA residents he served, be it during weekends, holidays or family vacations. She hopes the Court will show leniency at sentencing and give her husband a "second chance" (see "**Exhibit A**").

## Mr. Branch's Employment History

Mr. Branch's association with NYCHA began at age 14, in their summer youth employment program. He worked as a seasonal employee throughout high school and began full-time employment following graduation. Mr. Branch pursued continuing education classes and obtained numerous certifications, eventually working his way up from janitor, to superintendent, to neighborhood administrator. Whether it was a building fire, water main break, superstorm or pandemic, Mr. Branch was always a steady hand through crisis. His efforts earned him recognition within NYCHA, as well as accolades from outside entities such as the NYC Mayor's Office of Operations (see "**Exhibit B**").

More poignant than any award, however, is the support Mr. Branch has received from the colleagues and tenant advocates who have written the Court on his behalf (see "**Exhibit A**"). These letters describe Mr. Branch as "hardworking" and "always willing to help others." One colleague describes how Mr. Branch's mentorship helped her "learn how to be more patient and empathetic" towards others. The president of the Lafayette Gardens Residents' Association writes of Mr. Branch's "humility, respect and dedication," crediting his efforts in securing $2 million in emergency roof repair funding with "vastly improving living conditions" for the building's residents. His words are echoed by the other tenant advocates who have submitted letters on his behalf. The 56th Assembly District Leader, Kenesha Traynham-Cooper, mentions Mr. Branch's efforts mentoring at risk youth through local community-based organizations.

## Probation Recognizes Factors that May Warrant a Below Guideline Sentence

Following Mr. Branch's guilty plea, the United States Probation Office ("USPO") conducted a thorough presentence investigation. The PSR recounts the factual history of Mr. Branch's offense and corroborates much of his family, education, health and employment history. The PSR also confirms that Mr. Branch has been fully compliant with his pretrial supervision (see PSR at p. 5 ¶ 6, p. 22).

Probation Officer Jennifer Rose submitted an addendum and sentencing recommendation recommending the Court consider a variance pursuant to 18 U.S.C § 3553(a) and impose a below guidelines sentence of two years' probation (see PSR at P. 21-22). While acknowledging the seriousness of the offense, the USPO points to several mitigating factors, including Mr. Branch's "strong family ties and lack of criminal history," as well as the relatively low bribe amount, the non-violent nature of the offense and his compliance with pre-trial supervision, all suggestive of a low risk of recidivism (see PSR at P. 22).

<u>Application of the 3553(a) Factors in Support of a Below Guidelines Sentence</u>

On January 12, 2005, the Supreme Court ruled in *U.S. v. Booker*, 543 U.S. 220 (2005) that the mandatory application of the federal sentencing guidelines violated the right to trial by jury under the Sixth Amendment. The Court remedied the Sixth Amendment violation by excising the provisions in the Sentencing Reform Act that made the federal sentencing guidelines mandatory, thereby converting the mandatory system that had existed for almost 20 years into an advisory one. After *Booker,* sentencing courts are permitted to look outside the framework of the guidelines in U.S.S.G. § 5K, and the enumerated "Departures", and determine if there are grounds for a downward variance from the calculated sentencing guideline range.

Turning from the power and authority of the once "mandatory" sentencing guidelines, the Courts are redirected to look back at the primary sentencing mandate of 18 U.S.C. § 3553(a), "Factors to be considered in imposing a sentence," which in effect states the Courts must impose a sentence that is sufficient, but not greater than what is necessary to achieve the statutory purposes of punishment—justice, deterrence, public protection, and rehabilitation. Furthermore, the courts should recognize in determining the type and length of sentence that should be imposed, that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). "It is the sentencing court's prerogative- indeed its duty-to 'draw upon [its] familiarity with a case, weigh the factors enumerated in [section] 3553(a), and custom-tailor and appropriate sentence.'" *Unites States v. Ortiz-Perez*, 30 F.4th107, 112 (1st Cir 2022) (alterations in original) (quoting *Unites States v. Flores-Machciote*, 706 F.3d 16, 20 (1st Cir 2013)).

*Grounds for Downward Variance*

Pursuant to 18 U.S.C. § 3553, "Imposition of Sentence," the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the following purposes of sentencing" and "in determining a particular sentence to be imposed," consider the following:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;
2. The need for the sentence imposed-
    a. to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense;
    b. to afford adequate deterrence to criminal conduct;
    c. to protect the public from further crimes of the defendant;
    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in a most effective manner;
3. The kinds of sentences available;

4. The kinds of sentences and the sentencing range established.

Based on the analysis of these factors below, the defense submits that a below guidelines sentence is appropriate in Mr. Branch's case.

**The nature and circumstances of the offense and the history and characteristics of the defendant:** Mr. Branch does not seek to minimize his criminal conduct. He knowingly accepted bribes in the course of his employment with NYCHA. He is ashamed of his actions and has accepted responsibility. Yet, Mr. Branch has otherwise led a law-abiding, even exemplary, life aside from this incident; one devoted to bettering himself while serving others. His many good acts are documented in the numerous letters provided to this Honorable Court (see "**Exhibit A**").

**The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense:** Mr. Branch has already paid a tremendous price for his conduct. He has been shamed in the media and publicly humbled. He realizes it is his actions that have brought this upon himself and his family.

In addition, the financial impact of his conviction, irrespective of any fine or restitution this Court may impose, has been severe. As a condition of his plea, Mr. Branch was required to resign his employment with NYCHA. The paltry sums he profited from his graft cost him his six-figure NYCHA salary and untold amounts in lost benefits. While he hopes to transfer the skills and experience he acquired at NYCHA to another career, the stigma of this conviction has already presented obstacles to reemployment.[1] Mr. Branch's reemployment potential would be further curtailed by any carceral sentence, whereas a sentence of time-served would permit him to begin rebuilding his career without delay, unimpeded by the demands of probation.[2] Such a sentence would still reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

**The need for the sentence imposed to afford adequate deterrence to criminal conduct:** Warren Buffet once remarked that "it takes 20 years to build a reputation and five minutes to lose it." For Mr. Branch, his reputation was built over three decades of hard work and perseverance, wherein he elevated himself from a seasonal maintenance worker to a community supervisor within NYCHA. This reputation is attested to by the outpouring of support Mr. Branch has received from his colleagues. For someone less committed to their career, the reputational harm

---

[1]Former Associate Attorney General Vanita Gupta recently addressed the impact of collateral consequences stemming from criminal convictions.[1] Ms. Gupta noted that individuals who face barriers to employment resulting from criminal convictions have difficulty providing for their families and are at greater risk of living in poverty. These "effects go beyond impacted individuals and their families," and often "multiply within some communities, with disproportionate impacts on communities of color" (Associate Attorney General Vanita Gupta Delivers Remarks at "The Case for Second Chances: A Conversation About Criminal Justice, Collateral Consequences and Clemency." September 22, 2023. https://www.justice.gov/opa/speech/associate-attorney-general-vanita-gupta-delivers-remarks-case-second-chances).

[2] Recently, Mr. Branch received an offer of employment from the MTA (see "**Exhibit C**"). The offer has been withheld, however, pending the resolution of this case. While it is not certain the MTA will honor the offer at the conclusion of this case, we believe the likelihood of him gaining employment increases if Mr. Branch receives a sentence of time served instead of probation.

might be of less consequence. For Mr. Branch, however, who devoted his entire adult life to NYCHA, and took immense pride in his work, it is devastating. While the reputational impact of this conviction will serve to deter Mr. Branch, it can also further the purpose of general deterrence, as his downfall, and the publicity surrounding this entire case, sends a powerful message to other public employees of the perils associated with this type of graft.

**The need for the sentence imposed to protect the public from further crimes of the defendant:** As previously stated, Mr. Branch resigned from NYCHA as a condition of his plea. Aside from this incident, Mr. Branch has lived a law-abiding life, and an extraordinarily productive one. This crime was an aberration for him, one where he surrendered his good judgement and succumbed to temptation. If Mr. Branch were again to secure public sector employment, the lessons he has taken from this case make it all but certain he will not reoffend. Thus, protection of the public from further crimes by Mr. Branch can be achieved without jail, or even probation.

**The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in a most effective manner:** While Mr. Branch is not in immediate need of educational or vocational training, he considers himself a lifelong learner and is willing to acquire any new skills necessary to retool his career. Mr. Branch is generally in good physical and emotional health (PSR p. 11 ¶ 52-54), although he recently had an ambulatory hospital stay for which he is undergoing further evaluation. He is uncertain whether the stress of this case may have been a contributing factor.

**The kinds of sentences available and the sentencing range established:** As indicated in the PSR, the sentencing guideline range defaults to 8 to 12 months based on the maximum sentence for this misdemeanor offense. Because this is a misdemeanor conviction, this Court is statutorily authorized to impose a probation sentence (18 U.S.C. § 3561(c)(2) as recommended by the USPO (PSR p. 15 ¶ 72, p. 21-22). Of course, the Court may vary below Probation's recommendation and sentence the defendant to time served with a fine and restitution.

<u>Prevalence of Downward Variances in the Second Circuit & Lack of Incarceratory Sentences Within this Guideline Range</u>

According to statistics published by the United States Sentencing Commission, variances were granted in 52.6% of cases last year in the Second Circuit. 40.7% of these were non-Government sponsored downward variances (see *USSG Statistical Information Packet, Fiscal Year 2023, Second Circuit,* Table 8, p. 12, www.ussc.gov). The Southern District led the way with 69.4% of sentences varying outside the guideline range (*id.* at Table 9, p.13). In nearly 20% of instances, bribery and corruption related cases resulted in non-incarceratory sentences in this Circuit; however, since the USSG does not appear to publish data on misdemeanor level offenses, it stands to reason that the vast majority of the incarceratory sentences imposed involved felony convictions (*id.* at Table 5, p.9). Moreover, the PSR points to the USSG's JSIN database containing an insufficient number of defendants matching Mr. Branch's guideline criteria receiving jail sentences, thereby underscoring the near obsolescence of incarceratory sentence for this level offense.

<u>Conclusion</u>

Mr. Branch's conviction has sullied an otherwise exemplary and inspiring career. It is a painful reality that Mr. Branch will have to contend with, regardless of the sentence this Court imposes. He has seen the error of his ways and has already paid considerably for his transgressions. The harm an incarceratory sentence would cause him and his family is disproportionate to any legitimate sentencing goal and beyond what is necessary comply with the purposes of sentencing. While Mr. Branch will eagerly abide by the terms of a probationary sentence, we respectfully submit that a sentence of time served will be sufficient to comply with the goals of sentencing as dictated by Congress in 18 U.S.C § 3553.

Respectfully submitted,

*Thomas A. Kenniff*

Thomas A. Kenniff

Cc: AUSA Meredith Foster
    meredith.foster@usdoj.gov